**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **AKRAM SAFADI,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:06cv1055** |
| | ) | |
| **PHYLLIS HOWARD,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

In this mandamus action, plaintiff, Akram Safadi, seeks to compel defendant, Phyllis

Howard, District Director of the Washington Field Office of the United States Citizenship and

Immigration Services ("USCIS"), to adjudicate immediately his application to adjust to

permanent resident status.  Defendant has moved to dismiss plaintiff's suit for lack of subject

matter jurisdiction, pursuant to Rules 12(b)(1), Fed. R. Civ. P., or alternatively, for failure to

state a claim, pursuant to Rule 12(b)(6), Fed. R. Civ. P.  In essence, defendant argues there is no

jurisdiction over plaintiff's suit because

> (i)     8 U.S.C. § 1252(a)(2)(B)(ii) divests courts of jurisdiction over suits, where, as
> here, a plaintiff seeks review of a decision or action committed to agency
> discretion;
>
> (ii)    A writ of mandamus may not issue here because there is no clear right to
> "immediate" adjudication of his application; and
>
> (iii)   The Administrative Procedure Act ("APA") precludes judicial review of actions,
> where, as here, the action challenged is "committed to agency discretion by law."
> 5 U.S.C. § 701(a).

As this matter has now been fully briefed and argued, it is now ripe for disposition.  For

the reasons that follow, plaintiff's complaint must be dismissed for lack of subject matter

jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii).

## I.[1]

The facts may be succinctly stated.  In 1983, plaintiff, a citizen of Lebanon, entered the United States as a student and ultimately earned a Ph.D. in engineering.  Since 1997, plaintiff has remained in the United States on a temporary work visa.  On November 11, 2002, plaintiff filed with the Texas Service Center a "Form I-485, Application to Register Permanent Residence or Adjust Status" ("Application").  Thereafter, on December 11, 2003, plaintiff's Application was sent to the Washington, D.C. District Office in Arlington, Virginia.  Then, on or about January 21, 2005, his Application was transferred to the Vermont Service Center.

According to the affidavit of Todd W. Reader, Acting Service Center Director for the Vermont Service Center, USCIS is currently continuing to review information and evaluate plaintiff's eligibility for adjustment of status.  At this time, the status of plaintiff's background and security checks is as follows:

- FBI name checks were initiated on or around December 3, 2002, and results were received by USCIS on or about August 6, 2003.

- FBI fingerprint checks were initiated and results received by USCIS on or about February 12, 2003 and August 31, 2004.

- Interagency Border Inspection System checks were initiated and results received by USCIS on or about June 2006 and September 2006.

As a result of these various security checks, USCIS has concluded that issues remain requiring

---

[1]As defendant challenges subject matter jurisdiction, it is appropriate to consider "the pleadings as mere evidence on the issue and [to] consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Velasco v. Government of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004).

further inquiry.  Accordingly, USCIS is currently reviewing additional information and has not

finally adjudicated plaintiff's complaint

    In this case, plaintiff argues that USCIS' continuing review of information has been

unreasonably prolonged.  As such, plaintiff filed the instant complaint to compel defendant to

adjudicate his application "immediately."  Distilled to its essence, plaintiff alleges that there is

federal district court jurisdiction to review the pace of USCIS's processing and adjudication of an

adjustment application where, as here, four years have elapsed since the filing of the adjustment

application.

## II.

    Analysis properly begins with Congress's 2005 amendment to the Immigration and

Nationality Act, 8 U.S.C. § 1252(a)(2)(B)(ii), which provides:

> Notwithstanding any other provision of law (statutory or nonstatutory), including . . .
> section[] 1361 of [] title [28] . . . and regardless of whether the judgment, decision, or
> action is made in removal proceedings, no court shall have jurisdiction to review –
>
> (i) any judgment regarding the granting of relief under section . . . 1255 [adjustment of
> status] . . . or
>
> (ii) *any other decision or action* of the Attorney General or the Secretary of Homeland
> Security the authority for which is specified . . . to be in the discretion of the Attorney
> General or the Secretary of Homeland Security . . .

As courts have recognized, this statute's meaning is refreshingly free from ambiguity and its

terms are pellucidly clear: It means that courts are precluded from reviewing *any* discretionary

decision or action of USCIS.[2]  Specifically, subsection (i) excludes from judicial review any

---

[2] *See e.g., El-Khader v. Perryman*, 264 F. Supp.  2d 645, 649(N.D. Ill. 2003) ("The
meaning of the statute is clear and unambiguous – it precludes the courts from reviewing *any*

judgment regarding whether to grant or deny adjustment of status, while subsection (ii) excludes

from judicial review *any other decision or action* specified to be within USCIS's discretion.

There is no doubt that the adjustment of status application process falls within subsection (ii), as

§ 1255(a) specifically provides that USCIS has the discretion to adjust an alien's status, under

such regulations as it may prescribe.[3]  Pursuant to this discretionary authority, USCIS has

promulgated regulations regarding the adjudication process, including the performance of

background and security checks.  *See* 8 C.F.R. pt. 25.  The question then is whether subsection

(ii)'s exclusion of any discretionary "action" from judicial review serves to preclude judicial

review of the pace or nature of the process USCIS has implemented to execute its discretionary

authority to adjust plaintiff's status.  In other words, the question is whether the term "action"

encompasses the pace at which USCIS processes an adjustment of status application.

The plain meaning of the word "action" answers this question; it means "an act or series

of acts."[4]  Black's Law Dictionary 28 (6th ed. 1990).  Thus, under § 1252(a)(2)(B)(ii) the term

discretionary decision of" USCIS.), *aff'd sub nom. El-Khader v. Monica*, 366 F.3d 562 (7th Cir. 2004).

It is important to note that while the text of 8 U.S.C. § 1255(a), as enacted, referred to the Attorney General as the deciding official, the authority to adjudicate adjustment of status applications has since been transferred to the Secretary of Homeland Security and his delegate in USCIS.  *See* 6 U.S.C. § 271(b)(5); 6 U.S.C. § 557.  For ease of reference, USCIS is referred to herein as the entity with discretionary authority, rather than the specific individual in USCIS, defendant Phyllis Howard.

[3]In particular, 8 U.S.C. § 1255(a) provides "[t]he status of an alien. . . *may* be adjusted by [the DHS's delegate in USCIS], *in his discretion* and under such regulations *as he may prescribe*, to that of an alien lawfully admitted for permanent residence . . . ." (emphasis added).

[4]*See Escobar v. U.S. Immigration & Naturalization Serv.*, 935 F.2d 650, 652-53 (4th Cir. 1991) ("The first step in the interpretive effort is to ascertain whether the language in issue has a plain and ordinary meaning, for there is a strong presumption that the legislative purpose is

"action" encompasses *any* act or series of acts that are discretionary within the adjustment of status process.[5]  And, as § 1255(a) does not impose any limits on USCIS's discretionary authority over the adjustment of status process, it is clear that "action" in § 1252(a)(2)(B)(ii) encompasses the *entire* process of reviewing an adjustment application, including the completion of background and security checks and the pace at which the process proceeds.

Surely Congress, in passing § 1252(a)(2)(B)(ii), did not intend to preclude from judicial review all discretionary actions involved in the processing of an adjustment application except for the pace of such processing.   Indeed, to suggest that Congress intended to except the pace of the process from the general exclusion of judicial review is belied by the complete absence of any statutory time limits on the processing of adjustment applications.  Instead, § 1255(a) simply provides that the adjustment application process is subject to the regulations that USCIS may elect to prescribe.   Nowhere in the statute is there any reference to time limits for the processing of adjustment of status applications or the need for expedition in doing so.   The absence of any such reference is consistent with, and confirmatory of, Congress' intent to confer on USCIS discretion over not just the adjustment of status decision, but also the process employed to reach that result, and to exclude from judicial review the exercise of all that discretion.  *See Sharkey v. Ganter*, 2006 U.S. Dist. LEXIS 2607, at *12-13 (S.D.N.Y. 2006) (stating that under § 1255(a) USCIS has "wide discretion," thus, under § 1252(a)(2)(B) it is "clear that USCIS has non-reviewable discretion with regard to applications for adjustment of immigration status").   A

―――――――――――――――

expressed by the ordinary meaning of the words used.").

[5]*Cf. Danilov v. Aguirre*, 370 F. Supp. 2d 441 (E.D. Va. 2005) (holding that the word "examination" refers to a process, rather than a single event).

5

contrary conclusion would require judicial review in the absence of statutory standards, an unsound result surely not intended by Congress.  *See El-Khader v. Monica*, 366 F.3d 562 (7th Cir. 2004) (dismissing complaint for lack of subject matter jurisdiction where Attorney General has statutory discretion and no legal standard exists to evaluate the exercise of this discretion).

While authority on this jurisdictional question is yet sparse, as § 1252(a)(2)(B)(ii) as amended is still young, courts elsewhere have reached essentially similar results for essentially the same reasons.  Thus, a 2001 decision from the Southern District of New York dismissed a similar mandamus claim for lack of subject matter jurisdiction because the adjustment process is "wholly discretionary," and therefore, relief is "unavailable for delays in the adjustment process." *Zheng v. Reno*, 166 F. Supp. 2d 875, 880 (S.D.N.Y. 2001).  Similarly, and more recently, a decision from the Western District of Texas held that mandamus relief was unavailable for a claim of delay in the adjustment process where such delay was due to the continuing completion of security checks.  *Mustafa v. Pasquerell*, 2006 U.S. Dist. LEXI 8047, at *16-17 (W.D. Tx. 2006).  Significantly, the court there recognized that "delays of this nature are inevitable and becoming more frequent in light of heightened security concerns in the post-911 world."  *Id.* Finally, another Southern District of New York case dismissed both a mandamus and an APA claim for lack of subject matter jurisdiction because USCIS has no clear nondiscretionary duty to process applications for adjustment of status.  *Keane v. Chertoff*, 419 F. Supp. 2d 597, 600 (S.D.N.Y. 2006).

Plaintiff's argument in support of jurisdiction rests on an untenable distinction between (i) the adjustment decision, which he concedes is a discretionary agency action immune from

judicial review, and (ii) the processing of an adjustment application, which he argues is not an "action."  In effect, plaintiff argues that the phrase a "decision or action" encompasses only the result of the adjudications, *i.e.*, the decision, and not the process.  Plaintiff's argument fails as it would impermissibly render the word "action" superfluous.  *See Witt v. United Cos. Lending Corp.*, 113 F.3d 508, 512 (4th Cir. 1997) (noting that "courts should disfavor interpretations of statutes that render language superfluous") (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992)).

In sum, § 1255(a) vests USCIS with discretion over the *entire* process of adjustment application adjudication.  As such, § 1252(a)(2)(B)(ii) precludes judicial review of any "action," meaning any act or series of acts, included within the ongoing adjudication process and the pace at which that action proceeds.

This conclusion sufficiently disposes of this matter on jurisdictional grounds.  It is worth noting, however, that plaintiff's citation of sections 1331, 1361 and the APA do not serve to restore subject matter jurisdiction.  Indeed, § 1252(a)(2)(B), which governs here, specifically precludes judicial review notwithstanding § 1361, or any other provision of law.  *See* 5 U.S.C. § 701(a)(2) (providing that the APA does not apply where "statutes preclude judicial review").  Additionally, plaintiff's request for a writ of mandamus, pursuant to 28 U.S.C. § 1361, fails because the defendant does not owe plaintiff a "clear nondiscretionary duty" to process his adjustment of status application at any particular pace or speed.  *See Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1984) ("The extraordinary remedy of mandamus . . . will issue only to compel the performance of a clear nondiscretionary duty.").  Similarly, plaintiff's  reliance on

the APA to furnish the requisite subject matter jurisdiction fails because, as the APA explicitly

provides, judicial review is unavailable where, as here, the action challenged is "committed to

agency discretion by law." 5 U.S.C. § 701(a). Moreover, the APA cannot expand subject matter

jurisdiction. *See Danilov*, 370 F. Supp. 2d at 445 (stating that "general grants of jurisdiction may

not be relied upon to expand a very specific statute that either grants or limits jurisdiction").

Accordingly, even assuming subject matter jurisdiction existed notwithstanding §

1252(a)(2)(B)(ii), neither the mandamus statute, nor the APA, confer subject matter jurisdiction

over plaintiff's claim.

Importantly, not addressed here is the question whether jurisdiction would exist in a

district court to review plaintiff's case where USCIS refused altogether to process an adjustment

application or where the delay was so unreasonable as to be tantamount to a refusal to process the

application. This case presents no such facts. To be sure, the nearly four years thus far

consumed in the processing of plaintiff's application is far from an inconsiderable period of time

and it is easy to understand plaintiff's frustration. It is also understandable that the length of the

process is causing plaintiff substantial hardship. Nonetheless, in this post-9/11 world USCIS

must carefully and thoroughly investigate adjustment applications to ensure they are not granted

without the appropriate good cause.[6] Our national security requires that caution and

thoroughness in these matters not be sacrificed for the purpose of expediency. Given this, while

---

[6]*See Mustafa,* 2006 U.S. Dist. LEXI 8047, at * 15-17 (holding that mandamus relief is
unavailable for claims of delay in the adjustment process because "delays of this nature are
inevitable and becoming more frequent in light of heightened security concerns in the post-911
world").

the application processing time that has elapsed in this case has been substantial, the evidence

that USCIS is actively processing plaintiff's application makes clear that this is not a case where

USCIS has refused to adjudicate or process an application. Instead, it is a case in which USCIS is

and has been processing plaintiff's adjustment of status application, but has done so at a pace

plaintiff finds unsatisfactory.[7]  Because the pace of processing an adjustment application

comprises a part of USCIS's "action," and because USCIS has discretion over such actions, there

is no jurisdiction over plaintiff's complaint.

　　　　An appropriate Order will issue.


　　　　　　　　　　　　　　　　　　　　　　　____/s/_____

Alexandria, Virginia                                        T. S. Ellis, III
December 20, 2006                                      United States District Judge

_____

[7]It is worth noting that plaintiff's frustration over the pace of the adjudication process is better addressed to the political branches which, as the Supreme Court has noted, have "the responsibility for regulating the relationship between the Untied States and our alien visitors." *Mathews v. Diaz*, 426 U.S. 67, 81 (1976).